**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KIMBERLY SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | )    **CIVIL ACTION** |
| v. | ) |
| | )    **No. 16-1263-JWL** |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) consideration of this case, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision.

## I. Background

_____

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB and SSI benefits, alleging disability beginning June 1, 2011. (R. 23, 224, 229). She exhausted proceedings before the Commissioner, and now seeks judicial review of the Appeals Council's denial of her request for review and of the ALJ's decision denying benefits. Plaintiff claims that "[t]he Appeals Council erred in failing to remand the case in order for the ALJ to weigh the opinion from Dr. Lear under the treating source standard." (Pl. Br. 9).[2] She also claims error in the ALJ's evaluation of the credibility of her allegations of symptoms resulting from her impairments.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

---

[2]The court notes that Counsel for Plaintiff has once again failed to provide page numbers in her Social Security Brief, although she has paginated the Reply Brief. Therefore, in citing to Plaintiff's Social Security Brief, the court uses the page numbers supplied by the software it uses to read the .pdf file from the court's case management/electronic case filing (CM/ECF) system.

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e),

416.920(e).  This assessment is used at both step four and step five of the sequential

evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining whether, in light of the RFC assessed, claimant can perform her past relevant

work; and whether, when also considering the vocational factors of age, education, and

work experience, claimant is able to perform other work in the economy.  Wilson, 602

F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on

Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v.

Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182,

1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to

the Commissioner to show that there are jobs in the economy which are within the RFC

assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the Commissioner's final decision, but it first explains

that it is without jurisdiction to review the Appeal's Council's determination to deny

review of an ALJ's decision.

## II.     The Appeals Council's Decision to Deny Review

After the ALJ issued his decision in this case, Plaintiff requested review by the

Appeals Council and submitted 166 pages of additional evidence including her

representative's brief in which she argued that the ALJ erroneously discounted the

Medical Source Statement - Mental (MSSM) co-signed by Dr. Lear and Ms. Schneider, APRN on September 23, 2014. (R. 359). Most of the additional evidence (161 pages) was made a part of the record by Order of the Appeals Council dated April 29, 2016. (R. 7-8). Five pages of the additional evidence submitted consisted of "medical records from Comcare of Sedgwick dated March 16, 2015," and were not made a part of the record because they were about a time after the ALJ's decision issued on February 27, 2015. (R. 2, 15-19). The Appeals Council considered the additional evidence which had been made a part of the record, determined that it "does not provide a basis for changing the Administrative Law Judge's decision" (R. 2), and denied Plaintiff's request for review. (R. 1). Therefore, in accordance with the Social Security regulations the ALJ's decision became the final decision of the Commissioner. (R. 1); see also 20 C.F.R. §§ 404.900(a)(5) ("When you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision."), 416.1400(a)(5) (same). When the Appeals Council denies review, the ALJ's decision becomes the final decision of the Commissioner. Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003); see also 20 C.F.R. §§ 404.981 ("the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court"); 416.1481 (same).

In her Brief, Plaintiff argues that the ALJ rejected the opinion signed by Dr. Lear as a treating source opinion because the record did not contain evidence that Dr. Lear actually saw Plaintiff and he did not sign any of Nurse Schneider's treatment notes. (Pl.

Br. 9) (citing R. 31). She argues that the ALJ weighed the opinion as the opinion of an

"other medical source" and discounted it because Ms. Schneider is not an acceptable

medical source and because the opinion was not supported by Ms. Schneider's treatment

notes. Id. (citing R. 31). Plaintiff cites the additional evidence submitted by the Appeals

Council for the proposition that "Dr. Lear later provided clarification in the form of a

letter outlining his involvement in [Ms.] Sims'[s] treatment and upon what evidence he

relied in forming his opinion with Nurse Schneider, and [Ms.] Sims submitted this letter

to the Appeals Council." Id. (citing R. 687). Plaintiff then argues, "This letter prompted

evaluation of the opinion under the treating source standard instead of the standard for a

nonacceptable medical source. The Appeals Council should have remanded the case for

the ALJ to consider the opinion under the correct standard"--the treating physician

standard. Id. She argues that because the Appeals Council did not remand for the ALJ to

apply the treating physician standard, this court must remand "for the ALJ to apply the

treating source standard." Id. at 19. The Commissioner argues that the Appeals

Council's notice denying review is not the final decision of the Commissioner, the ALJ's

decision is, and this court is to consider all of the evidence, including that submitted to the

Council in deciding whether substantial evidence in the record suports the ALJ's

decision. (Comm'r Br. 9-10) (citing Martinez v. Barnhart, 444 F.3d 1201, 1208 (10th

Cir. 2006). In her Reply Brief, Plaintiff argues that "it would be unfair to hold the ALJ

accountable for evidence not available to him . . . [and that] the Appeals Council's failure

to remand the case for the ALJ's reconsideration of Dr. Lear's opinion caused the ALJ's

decision to be unsupported by substantial evidence." (Reply 2). Therefore, she argues that the "Appeals Council's failure to remand this claim at the administrative level does warrant remand in this case." Id.

After receiving Plaintiff's brief and the additional evidence, the Council provided a "Notice of Appeals Council Action" to Plaintiff in which it explained that it found no reason under the rules of the agency to review the ALJ's decision, and denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 1). The Council included an "AC [Appeals Council] Exhibits List" listing most of the additional evidence provided by Plaintiff (R. 5-6), and an "Order of Appeals Council" also listing most of the additional evidence provided by Plaintiff, and stating that it was making that evidence a part of the administrative record. (R. 7-8). In its notice, the Appeals Council stated that it had considered "the reasons you disagree with the [hearing] decision and the additional evidence listed on the enclosed Order of Appeals Council . . . [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." Id. at 2.

Plaintiff acknowledges that the "Appeals Council considered the new evidence making it part of the record for review in this court." (Pl. Br. 11). But she argues that the "Council erred in finding the evidence did not change the outcome of the case because the additional evidence left the ALJ's decision no longer supported by substantial evidence." Id. (citing Padilla v. Colvin, 525 F. App'x 710, 712 (10th Cir. 2013); Martinez v. Barnhart, 164 F. App'x 725, 732 (10th Cir. 2006); and Kesner v. Barnhart, 470 F. Supp.

2d 1315, 1323-24 (D. Utah 2006)). She argues that "whether treating physician analysis is required when a treating physician's opinion is submitted to the Appeals Council as additional evidence is an issue that 'does not appear to be settled in this circuit.'" (Pl. Br. 12) (quoting <u>Stills v. Astrue</u>, 476 F. App'x 159, 162 & n.1 (10th Cir. 2012) (comparing <u>Harper v. Astrue</u>, 428 F. App'x 823, 827 (10th Cir. 2011) and <u>Robinson v. Astrue</u>, 397 F. App'x 430, 432 (10th Cir. 2010))). And she argues that this court should follow the lead of the court in <u>Harper</u>. (Pl. Br. 12).

However, less than two months after Plaintiff filed her Reply Brief in this case, the Tenth Circuit settled the issue whether treating physician analysis is required when a treating physician's opinion is submitted to the Appeals Council as additional evidence. <u>Vallejo v. Berryhill</u>, 849 F.3d 951, 955-56 (10th Cir. 2017) (issued February 28, 2017). In <u>Vallejo</u> the plaintiff submitted a treating physician opinion as new, material evidence to the Appeals Council, the Council admitted and considered it, but denied review. <u>Id.</u> 849 F.3d at 953. On judicial review of the Commissioner's final decision, the district court ruled "that the Appeals Council erred 'in not properly articulating its assessment' of [the physician's] opinion in denying [the plaintiff's] request for review." <u>Id.</u> 849 F.3d at 953. On appeal, the Tenth Circuit held that because the Appeals Council denied review and did not make a decision "it was not required to follow the same rules for considering opinion evidence as the ALJ followed." <u>Id.</u> 849 F.3d at 955-56. The <u>Vallejo</u> court noted that it had considered the plaintiff's reliance on the <u>Harper</u> opinion, but declined to rely on that opinion because it was unpublished and non-precedential, it didn't cite <u>Martinez,</u>

444 F.3d 1201, or "attempt to square its decision with [the Tenth Circuit's] holding in that case," and it "doesn't address the Appeals Council's limited requirement to 'consider' new evidence under [20 C. F. R.] § 416.1470." Id. 849 F.3d at 956, n.3.

The issue is now settled. The Appeals Council is not required to follow the treating physician standard in considering the opinion of Dr. Lear. Therefore, it cannot have erred in failing to do so, or in failing to remand for the ALJ to do so.

But, Plaintiff is not without recourse. Evidence accepted and considered by the Appeals Council--as was Dr. Lear's opinion in this case--will be included in this court's review of the ALJ's decision. Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011); see also Martinez, 444 F.3d at 1208 (records accepted and considered by the Appeals Council "are a 'part of the administrative record to be considered by this court when evaluating the ALJ's decision.'") (quoting O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)) (brackets omitted). Hence, the real question before the court is whether, considering all of the evidence currently in the record, there is substantial evidence to support the Commissioner's decision. Martinez, 444 F.3d at 1208.

## III.    Dr. Lear's Opinion

Plaintiff argues that Dr. Lear's opinion should have been given deference over that of the state agency psychologist. (Pl. Br. 14). She argues that the only reason the ALJ gave to discount the opinion was because it was inconsistent with Ms. Schneider's treatment notes, particularly the GAF (global assessment of functioning) scores of 45 to

62.[3]  She argues that the treatment notes in fact support the opinion, and that although her

mental health symptoms waxed and waned, they significantly interfered with her ability

to function.  Id. at 16.  She argues that the state agency psychologist's opinion upon

which the ALJ relied was "outdated," vague, and contrary to the new and material

evidence presented to the Appeals Council, and the more recent medical records showed

deterioration in Plaintiff's mental health condition.  (Pl. Br. 16-18).  The Commissioner

argues that remand based on Dr. Lear's opinion is unwarranted because his opinion is

inconsistent with the other record evidence including treatment notes, GAF scores, and

mental status examination.  (Comm'r Br. 10).

### A.  Standard for Evaluating a Treating Source Opinion

---

[3]A Global Assessment of Functioning, or GAF, score is a subjective determination
which represents "the clinician's judgment of the individual's overall level of
functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000).  The GAF Scale ranges from 100
(superior functioning) to 1 (persistent danger of severely hurting self or others, persistent
inability to maintain minimal personal hygiene, or serious suicidal act with clear
expectation of death).  Id. at 34.  GAF is a classification system providing objective
evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36
(D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).
GAF scores in the range from 41 to 50 indicate "**Serious symptoms** (e.g., suicidal
ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in
social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."
GAF scores in the range of 51-60 indicate "**Moderate symptoms** . . . **OR moderate
difficulty in social, occupational, or school functioning.**"  GAF scores in the range of
61 to 70 indicate "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR
some difficulty in social, occupational, or school functioning** (e.g., occasional truancy,
or theft within the household), **but generally functioning pretty well, has some
meaningful interpersonal relationships**.  DSM-IV-TR 34. (emphases in original).

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

When a treating source opinion is not given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with the regulatory factors. <u>Id.</u> §§ 404.1527(c), 416.927(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2017). A treating source is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)). But the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting <u>Watkins</u>, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion

completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at

1301.

**B.**     **Analysis**

The ALJ explained the weight he accorded both the MSSM co-signed by Dr. Lear

and Ms. Schneider, and the medical opinion of the state agency psychological consultant,

Dr. Stern:

> Dr. Rex Lear, M.D. and Tobe Schneider, APRN, co-signed a medical
> source statement dated September 2014. (Exhibit 19F [(R. 664-66)]) Mr.
> Schneider[4] was the claimant's medication management nurse, but there is
> no indication that Dr. Lear ever saw the claimant and he did not co-sign any
> of Mr. Schneider's medication management notes. Thus, while Dr. Lear
> signed the opinion, it is not, in essence a treating source opinion that can be
> considered for controlling weight. This opinion also alleges several marked
> and extremely limited indications in areas of concentration and persistence,
> as well as social interaction. These are not reflective of Mr. Schneider's
> treatment notes, which indicate mental status examinations within normal
> limits and GAF scores ranging from 54 to 62, indicating improvement to
> mild symptoms. (Exhibit 15F [(R.561-77)]) Previous treatment notes from
> early 2013 indicate a 45-50 GAF score, showing serious to moderate
> symptoms, with mental status examinations within normal limits. Even if
> the lower range of GAF scores are seen as indicative of the claimant's
> functioning, they would still not support marked and extreme symptoms as
> noted in this form. There is no explanation for the divergence, for the
> severe nature of the reporting or why the claimant is so functionally limited.
> Given the lack of support in the record for this opinion it is found to have
> little persuasive weight.
>
> State DDS psychological consultant, Dr. George Stern, Ph.D., examined the
> claimant's medical records in September 2013. (Exhibit 7A, 8A [(R. 101-
> 36)]) He noted the claimant alleged bipolar and depression, although no

---

[4]The decision refers to Ms. Schneider as "Mr." Schneider, but at the hearing
Plaintiff stated, "She's raised my medication" (R. 52), and the court relies on Plaintiff's
personal knowledge of and contact with Ms. Schneider.

diagnosis of bipolarity can be found in the medical record. Dr. Stern also indicated that the claimant's daily activities are within normal limits, but that an employer report seemed to indicate some problems, as discussed above. The opinion indicates some problems with complex work tasks, irritability and anger. (Exhibit 8A at 14-15 [(R. 132-33)]) Dr. Stern specifically noted the claimant had "limited social interaction," which the undersigned interprets to mean that the claimant can only occasionally deal with the general public and only occasionally deal with co-workers. The other limitations are more vague, but the undersigned interprets them to support an exclusion of fast-paced jobs. The undersigned finds this opinion substantially persuasive, as it reflects the treatment notes of improvement from serious to mild symptoms with treatment, as well as her past history. While the claimant's current functioning would seem to be better with medication, the residual functional capacity reflects I have given the claimant the benefit of the doubt in establishing her overall functioning during the period of adjudication

.

(R. 31).

The court finds that this determination is supported by the evidence currently of record, including the additional evidence presented to, made a part of the administrative record, and considered by the Appeals Council. First, although the ALJ found no indication that Dr. Lear ever treated Plaintiff or co-signed her treatment notes and that the co-signed opinion was "not, in essence a treating source opinion that can be considered for controlling weight," it is not clear that he treated the co-signed opinion as merely the opinion of an "other" medical source who was not an acceptable medical source. (R. 31) (emphases added). Rather, he weighed it in accordance with the regulatory factors, provided several reasons to discount it based upon relevant factors, and did not state that Ms. Schneider was not an acceptable medical source, or give that as a reason to discount the opinion.

And the reasons given by the ALJ are supported by the record evidence including the new evidence provided to the Appeals Council. As the ALJ noted, the record reflects that Plaintiff's condition improved over time as she was compliant with her prescribed medications. Plaintiff argues that her GAF scores eventually began to decrease in the period covered by the new evidence, eventually going as low as 50. (Pl. Br. 16). While that is true, the treatment records reveal mental status examinations (MSE) that are essentially constant over time after her condition improved. Thereafter, when her GAF scores were moving downward, the mental status examinations remained consistent. (R. 668-83). What changed were factors external to the MSEs. On September 18, 2014 Plaintiff "express[ed] concerns and update[d] physical health issues," and brought a Medical Source Statement which Ms. Schneider "did not have time to complete" and rescheduled for completion. (R. 680). Just four days later, on September 22, 2014 Plaintiff returned "with chief concern voiced regarding need for completion of disability paperwork." (R. 676). The remainder of that treatment note, including the MSE, remained consistent with earlier notes in which her GAF scores had been increasing. On October 27, 2014, Plaintiff returned "with chief concern of being tired due to her physical health. Reports she has been in and out of the hospital 3-4 times since last OV [(office visit)]." (R. 672). And, in February, 2015 Plaintiff reported conflict with her son and his wife who were blaming their relationship problems on her living with them. (R. 668). Thus, although at these visits Ms. Schneider assigned GAF scores of 62 (Sept. 18, 2014, R. 682), 52 (Sept. 22, 2014, R. 678; Oct. 27, 2014, R. 674), and 50 (Feb. 2, 2015, R. 670),

those scores appears to be related to factors other than occupational functioning, and would not change the ALJ's evaluation of the opinion--as the Appeals Council found.

Moreover, Plaintiff places too much weight on the fact that Dr. Lear provided the Appeals Council with "clarification in the form of a letter outlining his involvement in [Ms.] Sims'[s] treatment and upon what evidence he relied in forming his opinion with Nurse Schneider." (Pl. Br. 9). Dr. Lear's "letter" consists of a letter from Plaintiff's counsel to Dr. Lear in which counsel thanked Dr. Lear for his help in co-signing the MSSM on September 23, 2014, but noted that "[t]here is come confusion on Social Security's part regarding the extent of your participation in Ms. Sims's care. I would greatly appreciate if you could answer the following questions by circling yes or no." (R. 687). The administrative record contains one treatment note by Comcare of Ms. Sims, dated February 27, 2013 (R. 468-70) which was electronically signed by Mr. Born, APRN on March 6, 2013. (R. 470). Immediately after the electronic signature, there is a handwritten signature without any printed identification, but which upon comparison is the same as Dr. Lear's signature on the MSSM he co-signed with Ms. Schneider. (Compare R. 470 with R. 666). Apparently relying upon this treatment note, the first question in Dr. Lear's "letter" asked if his co-signing of the February 27, 2013 treatment note indicated that he was involved in Plaintiff's care by reviewing her file, medical decision-making, and advising those who treated her at Comcare "from at least February 2013 through September 23, 2014?" Dr. Lear circled "yes." (R. 687). The second question in the "letter," asked if Dr. Lear had reviewed Plaintiff's file at Comcare,

including Ms. Schneider's notes before signing the MSSM on September 23, 2014.

Again Dr. Lear circled "yes." Id. While Dr. Lear's "letter" indicates that he was

personally involved in the treatment and medical decision-making regarding Plaintiff, it

says nothing to negate the reasons the ALJ discounted the treating source opinion co-

signed by Dr. Lear. It does not explain or support the marked and extreme limitations

expressed in the MSSM, it does not make the MSSM reflective of Ms. Schneider's

treatment notes (now considered to be Dr. Lear's treatment notes), and it provides no

explanation for the divergence between the MSSM and either the treatment notes or the

GAF scores assessed therein. Again, Dr. Lear's "letter" would not change the ALJ's

evaluation of the co-signed opinion--as the Appeals Council found.

A major concern of Plaintiff is that the ALJ stated that the MSSM at issue could

not be considered for controlling weight. However, the ALJ also weighed Dr. Stern's

opinion and found it "substantially persuasive." (R. 31). That finding by itself is

sufficient to justify denying controlling weight to the treating source opinion of Dr. Lear.

SSR 96-2p explains that the term "substantial evidence" as used in determining whether a

treating source opinion is worthy of "controlling weight" is given the same meaning as

determined by the Court in Perales, 402 U.S. at 401. SSR 96-2, West's Soc. Sec.

Reporting Serv., Rulings 113 (Supp. 2017). As the Ruling explains, evidence is

"substantial evidence" precluding the award of "controlling weight," if it is "such relevant

evidence as a reasonable mind would accept as adequate to support a conclusion that is

contrary to the conclusion expressed in the medical opinion." Id. Dr. Stern's opinion that

Plaintiff has mental limitations which are lesser than those opined by Dr. Lear and that "her limitations do not preclude all forms of employment" is just such evidence. (R. 133). The evidence which is currently in the record does not require a change in the findings reached by the ALJ in this case. Therefore, it does not require remand as Plaintiff suggests.

## IV.     The Credibility Determination

Plaintiff claims "that the ALJ dismissed [Ms.] Sims'[s] testimony based on her reports of smoking and 'sporadic treatment,' but [in doing so,] relied on mischaracterization of evidence and did not address other relevant factors." (Pl. Br. 19) (underline omitted). She argues that the first reason given by the ALJ was that Plaintiff's mental health treatment was sporadic, but that he did not explain how he reached that conclusion and he did not point out periods without treatment or with missed appointments. Id. at 20. She argues that he "also discounted [Ms.] Sims'[s] [allegations] based on an apparent unreliability in her reports about her smoking habits," but that actually Plaintiff "explained that she had tried to quit smoking a number of times." Id. at 21 (arguing that her "efforts and failures in smoking cessation . . . did not undermine her credibility"). She also argues that her "activities of daily living further supported [the credibility of] her allegations," id., and no record evidence suggests that her daily activities indicate the ability to work full-time. Id. at 21-22.

The Commissioner argues that the ALJ addressed several factors relating to the credibility of Plaintiff's allegations of symptoms resulting from her impairments

including her part-time work, and the inconsistency between the hours of work reported

(Comm'r Br. 5), and her inconsistent reports regarding smoking, and regarding use of an

inhaler.  Id. at 6.  She also suggested other inconsistencies which weigh against Plaintiff's

allegations of disabling symptoms.  Id. at 7-8.

### A.    Standard for Evaluating Credibility

The court's review of an ALJ's credibility determinations is deferential.  They are

generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.

1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility

determinations are peculiarly the province of the finder of fact" and will not be

overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord

Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations,

the court will usually defer to the ALJ on matters involving witness credibility.  Glass v.

Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d

1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings

as to credibility should be closely and affirmatively linked to substantial evidence and not

just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v.

Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

### B.    Analysis

The court will begin, as it must, with the ALJ's credibility determination and his

discussion of the bases for that determination.  In considering the credibility of Plaintiff's

allegations of symptoms, the ALJ provided numerous reasons for discounting those

allegations. (R. 28-31). He noted that Plaintiff told her mental health provider that she worked three days a week although she testified that she worked a total of only two to five hours in the week. (R, 28). He noted that Plaintiff consistently reported that she had recently stopped smoking throughout the period at issue here. Id. He noted that Plaintiff reported that she used her nebulizer and inhaler four times a day, but reported in the medical records that she only used her inhaler once or twice a week. Id. at 29. He noted Plaintiff's testimony that she was told by a physician's assistant that she needed to elevate her feet, but that the medical records do not contain a record of such a recommendation. Id. He noted that Plaintiff reported auditory and visual hallucinations at her consultative examination, but that such allegations were not reported in her treatment records. (R. 30). He found that Plaintiff "has a history of sporadic mental health treatment." Id. Finally, he noted that Plaintiff reported bipolar disorder, but that the record contains no evidence of such a diagnosis. Id. at 31. All told, the court recognizes seven reasons given by the ALJ to discount the credibility of Plaintiff's allegations of disabling symptoms. Plaintiff attacks two, and presents one factor allegedly supporting the credibility of her allegations.

Plaintiff argues that the finding that she has a history of sporadic mental health treatment was unexplained, but the ALJ specifically stated that Plaintiff "reported to Comcare for intake in January 2013, over 6 months after the alleged onset date." (R. 30) (emphasis added). Next, she argues that she was not unreliable in her reports about her smoking habits, but that she merely had multiple efforts and failures in smoking cessation. This is certainly a possible explanation of Plaintiff's reports of smoking

cessation, but the evidence can be viewed to suggest that her "self-reporting may be less than reliable" (R. 28), and it is not error for the ALJ to reach such a conclusion. For example, Plaintiff reported in the ER on March 19, 2013 that she had quit smoking "1 days" ago (R. 495), on September 27, 2013 she told the consultative examiner that she had quit smoking five days ago (R.555), on July 5, 2014 she reported that she had quit within the last two weeks (R. 583), and at the hearing in September 2014, she stated, "I finally quit two weeks ago." (R. 45). This record evidence supports the ALJ's finding that Plaintiff's "self-reporting may be less than reliable." (R. 28).

With regard to activities of daily living, Plaintiff claims that the ALJ did not make a finding regarding this factor, and argues that her activities support the credibility of her allegations. (Pl. Br. 21). While the ALJ did not make a specific credibility finding, he noted that Dr. Stern indicated plaintiff's daily activities are within normal limits, but that her employer seemed to indicate some problems. (R. 31). The ALJ discussed the employer's report of problems with physical limitations, fatigue, pace, and attendance. (R. 29). This is more than sufficient discussion to reveal that the ALJ considered the factor of Plaintiff's daily activities.

In this case, the ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that Plaintiff's allegations of disabling symptoms were not credible. Contrary to Plaintiff's argument, the court does not require a formalistic factor-by-factor recitation of the evidence in a credibility determination. So long as the ALJ sets forth the specific evidence he relies on in

evaluating the Plaintiff's credibility, the required discussion is met.  <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ provided seven reasons for his credibility determination.  Plaintiff has shown no error in that evaluation.

Plaintiff has shown no error requiring remand in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 28th day of September 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**